Carroll **ROBINSON**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17094.

United States Court of Appeals Eighth Circuit.

Feb. 6, 1964.

Douglas W. Thomson, (court appointed), St. Paul, Minn., made argument for the appellant and filed brief.

Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., made argument for the appellee and filed brief with Miles W. Lord, U. S. Atty., Minneapolis, Minn.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, .and DAVIES, District Judge.

BLACKMUN, Circuit Judge.

This case is before us for the second time. See Robinson v. United States, 304 F.2d 805 (8 Cir. 1962).

Carroll Robinson was convicted by a jury on all six counts of an indictment charging him with violations on April 4, 1961, and again on May 5, 1961, of federal marihuana statutes, namely, 26 U.S. C. § 4742(a) [transfer without proper written order], 26 U.S.C. § 4744(a) (1) [non-payment of the transfer tax], and 21 U.S.C. § 176a [receipt and concealment]. When the government then established Robinson's status as a second offender, the trial court imposed a general sentence for the minimum of ten years prescribed by 26 U.S.C. § 7237(b).

The defendant sought leave from the district court to have a transcript prepared at government expense and to appeal in forma pauperis. Judge Nordbye, in an opinion reproduced in full at pp. 805–807 of 304 F.2d, concluded that the appeal was frivolous and not taken in good faith. He permitted the filing of the appeal without fee but otherwise denied the defendant's petition.

Robinson then applied to this court. Upon our order the defense filed a report setting forth alleged errors. When this was done, we allowed the docketing of the appeal without fee, and dismissed the matter as "plainly frivolous". 304 F.2d 805, 810.

The defendant filed with the Supreme Court his petition for certiorari. The Solicitor General, in his response, observed that the grounds set forth in the report to this court were, except for one, "plainly frivolous"; that as to that one— that certain exhibits admitted in evidence were the product of an unlawful arrest and an unreasonable search—there was "a sound basis for concluding that this ground of objection was foreclosed in the court of appeals and is foreclosed in this court"; and that "Accordingly,

we think that there are ample grounds for affirmance of the judgment of conviction". Nevertheless, he went on to state that "it is also clear that after full briefs and argument, * * * the question, *i. e.*, whether the district judge should have taken notice of the possible illegality of the arrest, might well appear in a different light than upon a summary presentation merely calling attention to the point to be raised". Consequently, he suggested that "the Court may deem it proper to vacate the judgment below and remand the cause to the court of appeals with directions to allow the appeal". The Supreme Court responded in exactly that way, granted certiorari, vacated the judgment, and, "in accordance with the suggestion of the Solicitor General, the case is remanded * * * with directions to allow the appeal *in forma pauperis*". Robinson v. United States, 372 U.S. 527, 83 S.Ct. 888, 9 L.Ed.2d 966 (1963). Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962), which we had noted at pp. 809–810 of 304 F.2d, was cited as the supporting authority. The case is now before us in response to those directions and upon a complete transcript. Under these circumstances, we give it treatment in depth in all respects.

The facts are not in any real dispute. Robinson in 1961 lived with his girl Eunice in an upper duplex in Minneapolis. Wilson Sanders was the usual informer engaged and paid by the Federal Bureau of Narcotics. Sanders had a prior record and admitted occasional smoking of marihuana. On the morning of April 4, 1961, he advised a Minneapolis police officer that he had arranged to purchase heroin from Robinson. He met the officer and a federal narcotics agent. An interim telephone call to Robinson gave Wilson the information that marihuana, not heroin, was available. He was searched and given money. He was then observed entering the house where Robinson lived. When he emerged a few minutes later he had a small manila envelope containing a substance later identified as marihuana. Sanders testi-

fied that he purchased this from Robinson and Eunice for $10 and that the defendant took it out of a drawer. Essentially the same thing happened again close to midnight on May 5, 1961. On that occasion, however, Robinson came out of the house and handed a small plastic bottle containing marihuana to Sanders in the latter's car. Sanders gave him $10.

Eight weeks later at six o'clock on the morning of June 30, 1961, but during daylight, three Minneapolis police officers and a federal narcotics agent came to Robinson's house armed with warrants of arrest for Robinson and Eunice for violation of federal marihuana laws, but with no search warrant. The agent and one officer went to the front door and the other two to the rear. The agent testified that he "knocked with the barrel of my gun * * * for about two minutes at the front door"; that he and the officer were then admitted by the other two who had gained entrance at the rear by kicking in the door; that all four went upstairs and found the defendant and Eunice naked in bed; that they arrested them; that the four did not leave the room while Robinson and Eunice dressed; and that they had Eunice cover up with a sheet. There was no evidence as to any announcement, before entry, of authority and purpose.

The arresting officers searched Robinson's quarters. These consisted of a bedroom, living room, another small room, kitchen and bath. The search included looking into suitcases, drawers, and "sort of a file box" which was in the living room. In it the officers found seven small

manila envelopes and two packages of cigarette papers. The envelopes were identical with the one used by Robinson in the transaction of April 4. No marihuana was found. The nine items were admitted in evidence over defense objections made at the time of the offer [1] and again at the close of the government's case.[2]

The defendant did not take the stand.

No question is now raised about (a) Robinson's identity as Sanders' vendor (the record contains testimony that Robinson was well known to Minneapolis police and federal agents); (b) the identity of the vended substances as marihuana; (c) their having been in Robinson's possession; (d) non-use of the statutory order form; (e) non-payment of the transfer tax; (f) the validity of the arrest warrants; and (g) the sufficiency of the evidence to sustain the convictions.

The defense, however, asserts here (1) that the envelopes and packages were not admissible in evidence because the arrest was improper and the search unreasonable; (2) that the trial court's repeated references, in its charge, to marihuana as a narcotic drug were unfairly prejudicial; and (3) that the presumption, contained in 21 U.S.C. § 176a, of illegal importation flowing from unexplained possession, upon which two of the six counts rest, was inapplicable under the facts.

1. The envelopes and papers. In view of the Solicitor General's suggestion and the Supreme Court's response thereto, we must assume that the admission of at least the envelopes presents a question

---

1. "I object to the admissibility of the Government's Exhibits on the grounds they are incompetent, improper foundation, and there is no foundation that there was proper process in the nature of a search warrant issued in order to obtain this evidence, and therefore, if it is admitted, I move to suppress it on the grounds it wasn't properly obtained."

2. "I want to renew the motion to suppress the Government's exhibits pertaining to the envelopes and the cigarette paper

on the following grounds, one, the matter [manner?] in which the evidence was obtained was in violation of the Fourth Amendment and the Fifth Amendment of the United States Constitution, unlawful search and seizure. Number two, it has no probative value in establishing any of the elements of any of the acts for which the defendant was indicted, and three, there was no foundation laid that the items in question in fact belonged to the defendant."

of prejudicial rather than harmless cumulative material, or at least a question of "departure from a constitutional norm", Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); Homan v. United States, 279 F.2d 767, 771 (8 Cir. 1960), cert. denied 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88. Whether as much could be said for the cigarette papers is highly questionable; at least they are of no additional pertinency here.

■■ If the arrest was lawful, then, even in the absence of a search warrant, "there is a permissible area of search beyond the person proper". United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 433, 94 L.Ed. 653 (1950); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Also, if the arrest was lawful, and viewing the case on its particular facts, Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931), we would have no difficulty in finding this search to have been a reasonable one and appropriately limited, within the scope established by United States v. Rabinowitz, supra, although beyond the adjoining bedroom where the defendant was arrested. That result would be required by the decisions in Harris v. United States, 331 U.S. 145, 150–154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and Abel v. United States, 362 U.S. 217, 237–238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). See Ker v. California, 374 U.S. 23, 42, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Despite the nature of the search, in that drawers, suit cases and the box were looked into, and despite one of the agent's stating that after the arrest their next move "was to search the premises", we do not find here a general exploratory search or fishing expedition of the kind condemned in Go-Bart, supra, and in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). There was sufficient and appropriate specificity, namely, marihuana and the container employed for its transfer. Neither was it a search for "merely evidentiary materials", within the ban of Harris v. United States, supra, p. 154 of 331 U.S., p. 1103 of 67 S.Ct. and Gouled v. United States, 255 U.S. 298, 310, 41 S.Ct. 261, 65 L.Ed. 647 (1921). The objects in question were "instrumentalities and means by which a crime is committed". This result seems clear enough from these decisions regardless of the Supreme Court's recent observation that there are elements of irreconcilability among these cases. Abel v. United States, supra, p. 235 of 362 U.S., p. 695 of 80 S.Ct.

But if the arrest was improper, the fruit of the ensuing search is inadmissible. Giordenello v. United States, 357 U.S. 480, 483, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Weeks v. United States, 232 U.S. 383, 393, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

Miller v. United States, 357 U.S. 301, 308–314, 78 S.Ct. 1190, 1197, 2 L.Ed.2d 1332, the only case cited to us by the defense on the question of the arrest's validity, with its observation that announcement of authority and purpose before forcible entry is as applicable to an arrest under a warrant as to one without; with its "insistence on observance by law officers of traditional fair procedural requirements"; with its concern about "forcing entry into a home"; with its reference to 18 U.S.C. § 3109, which concerns the execution of a search warrant and demands notice; with its suggestion as to state law (see Minn. Stat. Ann. § 629.33 and its requirement of notice); and with all the implications to be drawn from that opinion, certainly indicate that the meager information which the present record contains as to the facts of the arrest would, if the issue were before us, constitute a shaky foundation on which to base a conclusion that the arrest was valid. See Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960); compare Sykes v. United States, 312 F.2d 232, 234 (8 Cir. 1963), cert. denied 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698.

We shall assume, for present purposes only, that such unembellished facts would compel, against a proper challenge, a conclusion that the entry and hence the

search were invalid. Thus we need not determine whether an announcement of purpose here would have been a "useless gesture", in line with the Supreme Court's intimation in Miller, p. 310 of 357 U.S., p. 1196 of 78 S.Ct. and the holding in Ker v. California, supra, p. 40 of 374 U.S., p. 1633 of 83 S.Ct., that exceptional circumstances may exist rendering announcement unnecessary.

■ But, with this assumption made, it does not at all follow that the exhibits were improperly admitted at the trial. There was no pretrial motion for the return of property and to suppress evidence, as is contemplated by Rule 41(e), F.R.Cr.P. If, as the defense now suggests in its brief here, it was not aware that these items had been seized at the time of the arrest and thus was not in a position to make the motion before trial, see Gouled v. United States, supra, p. 305 of 255 U.S., p. 263 of 41 S.Ct., there still remains the fact that during the trial there was no motion to suppress because of claimed illegality of arrest. There were an objection, on the ground of materiality, to testimony as to certain details of the search; a challenge to the exhibits themselves on the grounds of incompetency, lack of foundation and absence of a search warrant (footnote 1); and, at the close of the government's case, a motion to suppress on the grounds of irrelevancy, lack of foundation, and, generally, the Fourth and Fifth Amendments (footnote 2). Otherwise such details concerning the arrest as the record contains came in without objection as to the legality of that arrest and much of it (specifically, testimony as to the entry, the arrest, the clothing, the suit cases, the identical character of the envelopes, and the place where they were found) came in on direct examination and before any objection other than the one as to materiality was made at all.

■ The prosecution therefore was not challenged about the arrest, showed only such facts as led to the search, was under no necessity of offering evidence in justification and explanation of the entry, and in effect was lulled into an assumed security which the defense would now make false. We, of course, do not know from this record what the government would or could have proved by way of explanation and justification. We do feel that, under the circumstances of this case, the defense is not now in a position to complain by afterthought. If an arrest and the search and the discovery of evidence are to be challenged on appeal, that challenge must be made in the first instance in the trial court. Fairness to that court and to counsel and to a reviewing court demands this. So do "fair procedural requirements". This presents no "plain error" or Rule 52(b) situation for there may be no error at all. Somewhere the rights of the public and the rightful demands of orderly criminal procedure deserve protection, too. We think this case is controlled by Giordenello v. United States, supra, where the court said, p. 488 of 357 U.S., p. 1251 of 78 S.Ct.:

> "To permit the Government to inject its new theory into the case at this stage would unfairly deprive petitioner of an adequate opportunity to respond. This is so because in the District Court petitioner, being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine Finley or to adduce evidence of his own to rebut the contentions that the Government makes here for the first time."

and by United States v. Di Re, 332 U.S. 581, 588, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948):

> "This question [of the arrest's invalidity because of failure to inform the defendant of the cause of the arrest as required by state statute] was first raised from the Bench during argument in this Court. Di Re did not assert this ground of invalidity at the trial. Had he done so the Government might have met it with proof of circumstances which in themselves would show that Di Re had been effectively informed, even if the circumstances fell short

of establishing the statutory exception."

So these considerations apply to the defense as well as to the prosecution. See, also, Jones v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and Ker v. California, supra, pp. 43–44 of 374 U.S., p. 1635 of 83 S.Ct. We therefore reject the attack upon the envelopes and the papers.

■ 2. The references to narcotics. In its charge the court referred to the use of Sanders as an "undercover man"; to the need of such if the government "is going to successfully discover the channels through which narcotic members carry out their business"; to Sanders' employment, not only for this case, but for obtaining evidence as to others engaged "in narcotic activities"; to "the illicit drug traffic"; and to "the use of drugs and the offenses that sometimes follow in its wake". At the conclusion of the charge the defense apparently interposed an objection to these references to narcotics. We say "apparently" because the record omits the conversation at the bench at this point and is otherwise silent. Following this, the court made an additional remark to the jury which we set forth in the margin.[3] No challenge was made to this supplement.

The defense argument here is that, contrary to the court's statement, the statutes do not identify marihuana as a narcotic. It points out and asserts that the title of Subchapter A of Chapter 39 of the 1954 Code is "Narcotic Drugs and Marihuana"; that Part I thereunder deals separately with "Narcotic Drugs" and Part II with "Marihuana"; that 26 U.S.C. § 4731(a) defines "narcotic drugs" but does not include marihuana; that it "is scientifically established that marihuana is not a narcotic drug in that it has no addictive qualities"; and that the court's references were prejudicial in that they implied that the defendant was charged with a crime more shocking than was actually the case. We add that § 4761(2) separately defines marihuana and that the title of Part III also relates in the conjunctive to "Narcotic Drugs and Marihuana".

We are aware of these bilateral references and separate definitions. But we also observe (a) the joint application of several statutes, namely, §§ 4771–4775, to both narcotics and marihuana; (b) the obvious congressional concern with the marihuana traffic; (c) the interrelation of the statutes directed to substances with addictive tendencies and those having to do with marihuana; (d) the record's failure to disclose the defense objection; (e) the presence on the witness stand of persons who necessarily described themselves as narcotics agents or as officers of the Minneapolis police "narcotics squad" or "moral squad" and who referred to the Federal Bureau of Narcotics; and (f) the trial court's clear statement that it raised no inference as to addiction.

In Lake v. United States, 302 F.2d 452, 453–454 (8 Cir. 1962), this court found no plain error in a trial court's comment about marihuana, in certain respects stronger than those here, and likened it to "a fact or matter of common knowledge".

We note, too, for what it may be worth, that elsewhere in the law the boundary line, if any, between narcotics and marihuana is indistinct and that statutes and interpreting courts do not give much emphasis to it. See, for example, 21 U.S.C. § 184a(b); 49 U.S.C. § 787(d); State v. Navaro, 83 Utah 6, 26 P.2d 955, 957 (1933); Miller v. State, 11 Terry 579, 50 Del. 579, 137 A.2d 388, 390 (1958); Escobio v. State, Fla., 64 So.2d 766, 767 (1953); State v. Economy, 61 Nev. 394, 130 P.2d 264, 269

---

3. "The law refers to marijuana as a narcotic drug. I make no comment as to what the effects may be upon a human system. There are drugs and there are drugs. Be that as it may, marijuana is referred to in the law as a narcotic drug, and I in no way attempted to infer what effect it may have upon the human body or the results that may arise by reason of the use thereof. I merely call it a narcotic drug because that is what the law calls it."

(1942); Fawcett v. State, 137 Tex.Cr.R. 14, 127 S.W.2d 905, 906 (1939); Gonzales v. State, 168 Tex.Cr.R. 49, 323 S. W.2d 55, 56 (1959). Compare Mendoza-Rivera v. Del Guercio, 161 F.Supp. 473 (S.D.Cal.1958), aff'd 267 F.2d 451 (9 Cir.).

Federal juries are not unintelligent. We say with confidence that this jury was not misguided by the court's references. It knew what the trial judge meant when he said that marihuana is referred to in the law as a narcotic drug and that "There are drugs and there are drugs". The position of the marihuana statutes, snuggled among those having to do with addictive substances in the Internal Revenue Code and in the Food and Drug title, is significant and lends support and justification for the court's remarks.

In summary, we fail to see how the court's references could possibly have been prejudicial to this defendant in a way not already effected by the very evidence and the identity of the officer witnesses. We have read the court's entire charge carefully and we readily conclude that it was fair and unprejudicial and that the narcotics—marihuana aspect was by no means a dominant or controlling theme of that charge. There was no error here.

■ 3. The presumption in 21 U.S. C. § 176a.[4] Our disposition of the preceding points actually makes it unnecessary for us to consider this one. As was pointed out in this court's first opinion, p. 809 of 304 F.2d, this is because § 176a concerns only two of the six counts of the indictment and a valid conviction under any of the other four sustains the general sentence. Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959); Isaacs v. United States, 301 F.2d 706, 733 (8 Cir. 1962), cert. denied 371 U.S. 818, 83 S.Ct. 32, 9

L.Ed.2d 58; Bunn v. United States, 260 F.2d 313, 315–316 (8 Cir. 1958).

The presumption issue, in any event, has no substantive force. We touch upon the merits because of the possibility, which we regard as remote, that the Supreme Court might still direct a new trial. The government's expert, the director of laboratories for the Minnesota Bureau of Criminal Apprehension, identified the substances contained in the envelope of April 4 and in the vial of May 5 as marihuana. When asked on cross-examination if the plant was manicured, he said that he was "not too familiar with that term" and that he tested the leaves primarily. An objection to a question whether he could tell the source of the marihuana was sustained. The defense then made an offer to prove that, by testing a plant, it was impossible to determine its derivation or the locale where it was grown.

The only witnesses called by the defense were the same two narcotics agents who had testified for the government. They conceded that they had no knowledge that there was "any evidence that would indicate" that this marihuana had been brought into the country contrary to law.

[7] The defense argument is that, for a statutory presumption of this kind to be valid, there must be a rational connection between the fact proved and the ultimate fact presumed; that the decided cases where the presumption in § 176a has been upheld presented facts which justified the drawing of the presumption; that it is well known that marihuana grows in Minnesota and elsewhere in the United States; and that under the facts here no inference of importation is logical.

We are aware of the "rational connection" standard pronounced in Yee Hem v. United States, 268 U.S. 178, 183–185, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Casey

---

4. "Whenever on trial for a violation of this subsection, the defendant is shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632 (1928); Tot v. United States, 319 U.S. 463, 467–468, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); and in other cases. We had occasion recently to refer to those decisions. Sipes v. United States, 321 F.2d 174, 179–180 (8 Cir. 1963), cert. denied 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150. In the light of this standard the presumption in § 176a has been held constitutional by the Second Circuit, United States v. Gibson, 310 F.2d 79, 82 (2 Cir. 1962), and repeatedly by the Ninth, Costello v. United States, 324 F.2d 260, 263 (9 Cir. 1963); Rossetti v. United States, 315 F.2d 86, 87 (9 Cir. 1963), cert. denied 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49; Williams v. United States, 290 F.2d 451, 453 (9 Cir. 1961); Claypole v. United States, 280 F.2d 768, 771 (9 Cir. 1960); Butler v. United States, 273 F.2d 436 (9 Cir. 1959); Caudillo v. United States, 253 F.2d 513 (9 Cir. 1958), cert. denied sub. nom. Romero v. United States, 357 U.S. 931, 79 S.Ct. 1375, 2 L.Ed.2d 1373. See, too, Wong Sun v. United States, 371 U.S. 471, 493, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We know of no case where the opposite result has been reached. The presumption language in the statute is substantially identical to that upheld in Yee Hem v. United States, supra, p. 182 of 268 U.S., p. 471 of 45 S.Ct. We recognize that in some of the cited cases (Caudillo and Butler) the record contained evidence tending to show the unlikelihood of the marihuana's being locally grown. We think, however, that those two cases are not to be explained away, as the defense suggests, because of that fact but that, instead, their import is far deeper. The Ninth Circuit has now verified this. In the very recent case of Costello v. United States, supra, it said, p. 264 of 324 F.2d, "The fact that the marijuana involved in Butler and Caudillo was 'unmanicured' was simply an additional factor entering into the decision in those cases". The other opinions cited are flat in their holding. We agree and hold that the statute on its face meets the rational connection standard.

We note further that the presumption is rebuttable. This is evident from its language and it has been so held. Thomas v. United States, 314 F.2d 936, 939 (5 Cir. 1963). But we conclude that the burden of going forward with the evidence, which the presumption places upon the defense, United States v. Gibson, supra, p. 81 of 310 F.2d; see Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), has not been met here. All the evidence relied upon by the defense plus the offer which was rejected amount to nothing more than an attempt to show that the government had not proved that this particular marihuana was imported illegally. The very presumption, however, supplies this lack. In order to rebut there must be positive evidence explaining possession. There was none here.

A contention that marihuana can be grown in the United States has been held insufficient to destroy the presumption. United States v. Gibson, supra, p. 82 of 310 F.2d; United States v. Taylor, 266 F.2d 310, 312 (7 Cir. 1959), cert. denied 361 U.S. 853, 80 S.Ct. 96, 4 L.Ed.2d 92; Costello v. United States, supra, pp. 263–264 of 324 F.2d. So also has a defendant's personal testimony that he did not know that the prohibited substance was imported. United States v. Norton, 310 F.2d 718 (2 Cir. 1962); Vick v. United States, 113 U.S.App.D.C. 12, 304 F.2d 379 (1962). We note, for what additional weight it may afford, that since at least 1953 possession of most of the parts of the plant has been illegal in Minnesota. Minn.Stat.Ann. § 618.01, Subdivisions 14 and 23, and § 618.02.

We have no difficulty in concluding that, upon the facts of this case, the presumption in § 176a is available here and is constitutional.

In our former opinion this court expressed appreciation to Douglas W. Thomson of the Saint Paul Bar who represented the defendant, under court appointments, both at the trial and in connection with the in forma pauperis ap-

plication. We state again that we are indebted to him for his further work in Robinson's behalf on the appeal itself. He has vigorously presented the defendant's cause.

Affirmed.