Robert Henry **SYKES** and Haydon David Jones, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 23571.

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1966.

Rehearing Denied Dec. 29, 1966.

Certiorari Denied March 20, 1967.

See 87 S.Ct. 1172.

Louis Glazer, Miami Beach, Fla., for Sykes.

Thomas B. Duff, Miami, Fla., for Jones.

James O. Murphy, Jr., Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before BROWN, GEWIN and GOLD-BERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants Robert Henry Sykes and Haydon David Jones were convicted by a jury of forcibly breaking into the Key Largo, Florida post office, in violation of 18 U.S.C.A. § 2115. Both appellants received sentences of five years. Trial was completed on October 25, 1966, and the appellants were sentenced on that date.

Both appellants seek reversal, first, because the evidence was insufficient to sustain the verdict. Since the evidence was predominantly circumstantial, it invites scrutiny but does not proscribe affirmance.

The Key Largo post office was secured for the night of October 18–19, 1965. At or somewhat after midnight, Deputy Sheriffs Vidal and Sanders, of Dade County, cruised past the post office and noticed from their car that the post office safe was not in its usual place, against the south wall of the building. (When in place, the safe is visible from the street and has a light burning over it twenty-four hours a day). The deputies left their car, and found that the rear door of the post office appeared to have been forced open and was then slightly ajar. Upon entering the building, they found the safe lying on its back, with the outside sheeting partially peeled back at one corner of the safe door. There was a broken screwdriver lying on the safe and a wrecking bar lying next to it. The deputies then called in another officer who took over the post office investigation while they themselves went out to patrol the area looking for suspects. Shortly later, about three-tenths of a mile from the post office the officers observed a car, without headlights, slowly pull out from an area adjacent to the Key Largo City Club, which was closed at that time of night. The headlightless car proceeded north, towards the post office, on U. S. Highway 1. The deputies followed it; when it passed the post office, its lights came on. The deputies continued to follow it and recognized its passenger to be the defendant Sykes. The deputies then stopped the car and arrested Sykes and the driver of the car, the defendant Jones.[1]

---

1. The stated grounds at time of arrest were driving without lights and vagrancy. The former, of course, covered only the driver, Jones. The stated ground for Sykes' ar-

Sykes and Jones then were returned to the post office, where they were handcuffed to protrusions of the building while the investigation continued. They remained so handcuffed for about three quarters of an hour. During this period their shoes were removed and they stood for a while in their stocking feet. Then the defendants were taken to the sheriff's substation on Plantation Key, where their clothes were removed and sent for analysis to a crime laboratory.

The search at the post office yielded the following evidence: At the door which had been forcibly entered, officers found the tip of the broken screwdriver found on the safe. More important, 225 feet away from the building a crowbar and a flashlight were found close together.

A forensic chemist testified that the socks and trousers of Jones had on them flecks of a standard gray paint identical to that on the safe. On Sykes' socks and clothes was found material "similar" to the safe insulation. Pieces of red paint on the crowbar found 225 feet away from the building were identical to the red paint on the bottom of the safe. This crowbar with the red paint on it was then connected to the defendants by the testimony of Donna Festa that the flashlight found next to the crowbar was hers, and that it had been in her car when she lent the car to Sykes and Jones on October 18. Sykes and Jones were driving Donna Festa's car when arrested. Mrs. Festa gave more damaging testimony. She stated that Jones had said to her when released from his arrest, "It's a shame that I couldn't have made it, because I heard there was $17,000 or $18,000 in there." Mrs. Festa testified that later on, in November, " * * * he [Jones] said if Mr. Sykes

had not stood up from behind the counter when a man and woman drove up in front of the post office, that they would not have been caught."

■ Our duty in questioning the sufficiency of circumstantial evidence is to take the view of the evidence most favorable to the government,[2] and to question whether the reasonable inferences to be drawn from such evidence are inconsistent with every reasonable hypothesis of innocence. Duncan v. United States, supra note 2, Cuthbert v. United States, 5 Cir. 1960, 278 F.2d 220, Vick v. United States, 5 Cir. 1954, 216 F.2d 228. In the present case no reasonable hypothesis of innocence is consistent with the admissions made by Jones to Mrs. Festa. The physical evidence which places Jones at the scene of the crime corroborates his guilt.

We assume without deciding that the Jones admissions, however, are not admissible against Sykes, as the trial judge ruled. Wong Sun v. United States, (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 441 (1963), United States v. Gardner, 7 Cir. 1965, 347 F.2d 405, cert. denied 382 U.S. 1015, 86 S.Ct. 626, 15 L.Ed.2d 529. Accord: Canida v. United States, 5 Cir. 1958, 250 F.2d 822, Scarborough v. United States, 5 Cir. 1956, 232 F.2d 412, Mora v. United States, 5 Cir. 1951, 190 F.2d 749. The case against Sykes consists of evidence placing him with Jones and the Festa car before and just after the crime, and of linking him to the scene of the crime through the similarity of the material found in his clothes to the insulation of the safe.

■ It is not enough "to show that each piece of testimony is susceptible of an innocent interpretation if it stood alone. The trier is entitled, in fact

---

rest was never made clear. When Sykes got out of the car at the deputies' order, he dropped a pair of brown work gloves. At this point the deputy stated that Sykes, too, was arrested. These details are sketchy, but it is clear that the deputies were in fact arresting both men on suspicion of burglary. As we hold herein that the legality of the arrests cannot

now be questioned, we need not speculate as to what actually happened.

2. "It is not the function of an appellate court to weigh the evidence anew or to pass on the credibility of witnesses." McFarland v. United States, 5 Cir. 1960, 273 F.2d 417. Duncan v. United States, 5 Cir. 1966, 357 F.2d 195.

bound, to consider the evidence as a whole; and, in law as in life, the effect of this is much greater than of the sum of the parts." United States v. Bottone, 2 Cir. 1966, 365 F.2d 389, 392. The jury in the present case could not ignore the import, in combination, of the testimony and scientific evidence placing Sykes, in dead of night, in a post office which had been broken into and entered, and near a safe which had been tampered with. The inference to be drawn from this presence is too clear to be ignored. We hold that the evidence was sufficient as against both defendants.

Defendant Jones next urges reversal because the trial court unduly restricted the cross examination of Donna Festa.[3]

3. The following is the entire cross-examination of Mrs. Festa:

"BY MR. DUFF:

Q  Now, is that Miss or Mrs. Festa?

A  I'm a divorcee, Mr. Duff.

Q  Now, you related in answer to the questions of Mr. Murphy that it may have been at your apartment, may have been at your place of business, may have been in a car. Did you say a motel? I'm sorry, you had numerous places—

MR. MURPHY: I object to that.
MR. DUFF: She had numerous places. I'm trying to determine where she had this conversation.
THE COURT: Sustain the objection. Let's stay within the testimony.

BY MR. DUFF:

Q  Do you recall specifically where you had this conversation with Mr. Jones?

A  I do not, Mr. Duff.

Q  Now, do you recall threatening Mr. Jones if he didn't come live with you, since this case has started?

MR. MURPHY: I will object to that, your Honor.
THE COURT: Sustained.
MR. DUFF: It has to go to the veracity of this—
THE COURT: Wait a minute. Wait a minute. That's an improper way to put the question. When, where and how.
MR. DUFF: I said since the institution of this action.
THE COURT: No, no.
MR. DUFF: I have already specifically set the date.
THE COURT: No. Did she threaten him? Was she talking to Jones or talking to Smith or was he—
MR. DUFF: I asked if she was threatening—
THE COURT: —In New York City or where?
MR. DUFF: I specifically identified this particular defendant Jones, whether or not—
THE COURT: I know, but that's not near sufficient. Now, time, place, circumstances and who was present and so forth. In other words, you have to identify the situation, as you well know.

BY MR. DUFF:

Q  Did you, on November 15, 1965, request this defendant to come home and live with you?

MR. MURPHY: I will object to that, your Honor.
MR. DUFF: I have specifically set forth the time and the place and the occasion.
THE COURT: That's immaterial, whether she did or didn't. Now, what else?

BY MR. DUFF:

Q  Or that you would come and be a witness against him?

MR. MURPHY: I will object to that, your Honor.
THE COURT: Well, she can answer yes or no.

BY MR. DUFF:

Q  She has a right to answer it.

A  I have always meant to testify, Mr. Duff, since this incident happened, and I spoke that to Mr. Jones.

Q  I see.

A  Yes, sir.

Q  And did you contact his wife on or about the 15th of November, 1965, with the same threat that if he didn't come live with you, you would come and testify against him?

MR. MURPHY: I will object to that, your Honor.
THE COURT: Overruled.
MR. MURPHY: Answer the question.
THE COURT: Did you on that date call Mrs. Jones and threaten and state that if Mr. Jones didn't come and live with you, you would testify against him in this case?
THE WITNESS: No, I didn't, your Honor. We were going back and forth with one another, yes, we were.
MR. ZAROWNY: Speak up. I can't hear.
THE COURT: 'No, I did not. We were going back and forth with one another.'

Counsel on appeal claims that he should have been able to bring more thoroughly to the jury's attention the fury of the scorned woman. This claim merits close attention. It appears from cross-examination that the defendant's counsel tried to establish two things: first, that Mrs. Festa had asked Jones to come live with her, and, second, that she had assaulted Jones after his arrest and before his trial. The first of these was finally established with this exchange:

> "Q And did you contact his [Jones's] wife on or about the 15th of November, 1965, with the same threat that if he [Jones] didn't come live with you, you would come and testify against him?
>
> MR. MURPHY: I will object to that, your Honor.
>
> THE COURT: Overruled.
>
> MR. MURPHY: Answer the question.
>
> THE COURT: Did you on that date call Mrs. Jones and threaten and state that if Mr. Jones didn't come and live with you, you would testify against him in this case?
>
> THE WITNESS: No, I didn't, your Honor. We were going back and forth with one another, yes, we were."

■ Counsel also established from Mrs. Festa that she had an "emotional interest" in Jones and had pursued him. The trial judge did order the jury to disregard Mrs. Festa's answer of "fraudulently" to the question of whether she had been convicted of an assault and battery upon Jones. The Court evidently felt that this question of assault was extrinsic to this case. The trial judge is, of course, given great discretion in determining the scope of cross examination on the subject of the bias of the witness. Ford v. United States, 5 Cir. 1956, 233 F.2d 56, cert. denied 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956), 3 Wharton, Criminal Evidence § 872, pp. 269–270 (12 ed. Anderson 1955).

■ In the present case counsel was permitted to establish the nature of the entanglement of Mrs. Festa and Jones, and the trial judge did not abuse his discretion by refusing to go into a collateral issue when the whole of the basic picture had been shown. The tenor of the relationship, its emotional peaks and valleys, was communicated to the jury, offering a basis for imputing bias to the Festa testimony. This was argued to the jury.[4] Counsel were not unjustifiably denied the opportunity to detail the history of the relationship. Only the

---

> THE WITNESS: Yes. I had only known Mr. Jones two weeks when this incident occurred.
>
> BY MR. DUFF:
>
> Q Then, I ask you whether or not on the 10th of December, 1965, you addressed a letter to Mrs. Jones?
>
> A Yes.
>
> MR. MURPHY: Your Honor—
> THE COURT: The answer is yes.
>
> BY MR. DUFF:
>
> Q Is it your testimony then that you have an emotional interest in Mr. Jones all through this case?
>
> A I have never denied that. Why should I?
>
> Q Is Mr. Jones living with you at the present moment?
>
> A Not at the present time, no.
>
> Q Have you been convicted of an assault upon him since the institution of this action?
>
> MR. MURPHY: I will object, your Honor.

> THE COURT: Sustained. That's not the proper question.
>
> BY MR. DUFF:
>
> Q Has this interest in Mr. Jones that you have evidenced compelled you to pursue him to his home?
>
> A Well, he also pursued me.
>
> Q As a result of this pursuing, were you convicted of assault and battery upon him?
>
> A Fraudulently.
>
> MR. MURPHY: I object.
> THE COURT: Sustained. That's not a proper question. Nothing to do with this case. What has that to do with this case?
> MR. MURPHY: I would like to ask the Court to have that stricken.
> THE COURT: Stricken. Ignore it."

4. Counsel for Jones said in part: "Now, let's go to one of the prime witnesses. I think Mr. Murphy used the term 'Miss.' I believe I was corrected by the woman on

purple and scarlet passages are absent. Williams v. United States, 1963, 117 U.S.App.D.C. 206, 328 F.2d 178. See Mahler v. United States, 2 Cir. 1966, 363 F.2d 673.

▮ Defendants next object that real evidence taken from their clothing after the arrest is inadmissible because the arrest was illegal. No pre-trial motion to exclude this evidence was made below, and no objection was made on this ground during trial. We therefore may notice only plain error on appeal. Rule 52(b), Fed.R.Crim.Proc. Plain error under Rule 52(b) means error both obvious and substantial. Many cases discussing "plain error" determine only whether or not the error affected substantial rights. Helms v. United States, 5 Cir. 1964, 340 F.2d 15, cert. denied 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62. This approach is clearly justified where the error was clear, or where, assuming there was error, that error did not affect "substantial rights", Thomas v. United States, 5 Cir. 1961, 287 F.2d 527, cert. denied 366 U.S. 961, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961), reh. denied 368 U.S. 884 (1961), Teate v. United States, 5 Cir. 1961, 297 F.2d 120. This determination is made upon the facts of the particular case, Sullivan v. United States, 5 Cir. 1963, 317 F.2d 101, cert. denied 375 U.S. 854, 84 S.Ct. 114, 11 L.Ed.2d 81 (1963), so that the reviewing court has the proper perspective. "In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure." Frankfurter, J., concurring in Johnson v. United States, 318 U.S. 189, 202, 63 S.Ct. 549, 87 L.Ed. 704, 714 (1943). The danger is that " * * * the perspective of the living trial * * * [will be] lost in the search for error in a dead record." Frankfurter, J., dissenting in part in Glasser v. United States, 315 U.S. 60, 88, 62 S.Ct 457, 473, 86 L.Ed. 680, 708 (1942).

In the present case, however, whether or not there was error is not at all clear, although the error, if it existed, would have been substantial. The error multiplies the difficulty of breathing life into a paper record. There is nothing conclusive in the evidence establishing either the legality or illegality of the arrest.

Imagination in re-living the trial is here not sufficient, but must be accompanied by speculation as to what would have appeared had the claim of error been considered. Speculation wastes time and bears ephemeral fruit. For this reason this Court has held that there is no "plain error" where, irrespective of the substantiality of the claimed error, the record does not present the question in enough detail. Roe v. United States, 5 Cir. 1961, 287 F.2d 435, cert. denied 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961); see Clifton v. United States, 5 Cir. 1965, 341 F.2d 649. Our cases emphasize that a timely objection permits the government to defend its challenged position, creating an adequate record, and, far more importantly, allowing the trial court to determine the facts and disinfect the record of error so that retrial may not be necessary. Williams v. United States, 5 Cir. 1966, 358 F.2d 325, United States v. Melendez, 5 Cir. 1956, 355 F.2d 914, Miller v. United States, 5 Cir. 1966, 354 F.2d 801, Casados v. United States, 5 Cir. 1962, 300 F.2d 845, cert. denied 373 U.S. 938, 83 S.Ct. 1543, 10 L.Ed.2d 693 (1963), Self v. United States, 5 Cir. 1957, 249 F.2d 32, Benson v. United States, 5 Cir. 1940, 112 F.2d 422, cert. denied 311 U.S. 644, 61 S.Ct. 43, 85 L.Ed. 411 (1940). The burden of showing that the error was commit-

---

the stand and then he used the term 'Lady', and I asked her if he is sleeping with Jones now and she said not at the moment. She's going to have you believe that this is her flashlight. * * * " He also repeatedly referred to Mrs. Festa as "that woman." Counsel for Sykes argued: "Now, they produced a real strong witness, this lady that appeared here. Must I just remind you, gentlemen, 'Hell hath no fury like a woman scorned.' You know that. And we'll leave her with that."

ted, and is not mere speculation, is on the appellant. San Fratello v. United States, 5 Cir. 1965, 340 F.2d 560, United States v. Melendez, supra; and see Baker v. United States, 5 Cir. 1946, 156 F.2d 386, cert. denied 329 U.S. 763, 67 S.Ct. 123, 91 L.Ed. 657 (1946), reh. denied 329 U.S. 829, 67 S.Ct. 295, 91 L.Ed. 703 (1946).

The present case classically illustrates the soundness of this rule. Whether or not there was error was not visible because all of the circumstances of the arrest were not before the court. That which is not visible cannot be "plain." We are not equipped for divination. Only the proper objection to the offered evidence would have allowed a clear picture in which we might have found error. "The prosecution therefore was not challenged about the arrest, showed only such facts as led to the search, was under no necessity of offering evidence in justification and explanation of the entry, and in effect was lulled into an assumed security which the defense would now make false. We, of course, do not know from this record what the government would or could have proved by way of explanation and justification. We do feel that, under the circumstances of this case, the defense is not now in a position to complain by afterthought." Robinson v. United States, 8 Cir. 1964, 327 F.2d 618, 623.

A holding to the contrary without justification would surely tempt defendants to try for two bites of the apple, saving defenses for use in getting a new trial on appeal if the first trial has yielded a guilty verdict. At some stage we must hold for orderly and speedy criminal procedure. We do so here.

The appellants cite Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). These cases are of no avail. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Affirmed.