James Leon CLAY and Leo Junior Clay,
Appellants,

v.

UNITED STATES of America,
Appellee.

James Leon CLAY, Appellant,

v.

UNITED STATES of America,
Appellee.

Leo Junior CLAY, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 19050–19052.

United States Court of Appeals
Eighth Circuit.

May 10, 1968.

Jerry T. Light, Little Rock, Ark., for appellants and filed brief.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for appellee; Hon. W. H. McClellan, U. S. Atty., was on the brief with Mr. Riddick.

Before MATTHES, LAY and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

Appellants, who are brothers, have appealed from judgments of conviction entered upon jury verdicts finding them guilty, as charged, of a Dyer Act offense and transportation of stolen firearms in interstate commerce. The cases were tried jointly under separate indictments.

The indictment in appeal No. 19,050 charged James Leon Clay and Leo Junior Clay with transporting in interstate commerce, in violation of 18 U.S.C. § 2312, a stolen 1964 Oldsmobile from North Little Rock, Arkansas to Ellicott, Maryland, knowing the same to have been stolen. In appeal No. 19,051 James Leon Clay was charged individually with transporting in interstate commerce a stolen firearm—a .32 caliber pistol—from North Little Rock, Arkansas to Ellicott, Maryland in violation of 15 U.S.C. § 902. The indictment in No. 19,052 was identical except that it charged Leo Junior Clay with transportation of another stolen pistol between the same two points. All three offenses were alleged to have been committed on or about June 19, 1967.

Nos. 19,051 and 19,052

Appellants do not challenge the sufficiency of the evidence to sustain the conviction on the gun transportation charges. We refrain therefore from a detailed statement of the evidence.

A business establishment in Little Rock, Arkansas was burglarized on June 7, 1967. Approximately twelve pistols and other items of merchandise were stolen. Two of the stolen pistols were found in the possession of the appellants after their apprehension in the state of Maryland. The weapons were identified by their owner and introduced into evidence.

Appellants' main contention of error is premised on the lack of probable cause for their arrest and the illegality of the contemporaneous search and seizure of the stolen pistols from their persons. They argue that since there was no probable cause for their arrest, their convictions must necessarily rest on the use of evidence obtained by means of an illegal search and seizure, not incidental to a lawful arrest.[1]

Appellants' counsel acknowledges that the question of probable cause was not properly presented to the district court either by motion to suppress under Rule 41(e) or by objection at the time that the guns were offered into evidence. Counsel nevertheless argues for consideration of this issue on the ground that the matter had been brought to the attention of the court during the trial. He suggests that the trial judge should have probed sua sponte into the circumstances of the arrest. He now submits that this Court should consider the question under the "plain error" rule. See Rule 52(b), Federal Rules of Criminal Procedure.

After the appellants had been returned to Little Rock, Arkansas following their arrest, they were unsuccessful in retaining a lawyer to represent them. The district court, Honorable Gordon E.

---

1. In his brief on appeal, however, appellants' counsel tacitly concedes the validity of the arrest of James Leon Clay, but asserts there was no probable cause to arrest Leo Junior Clay.

Young, appointed Mr. William R. Overton, a member of a prominent law firm in Little Rock, to represent them. The attorney filed, among others, a motion to suppress certain incriminating statements made by the appellants to officers in Maryland. Judge Young conducted a plenary hearing on the motion and excluded the incriminating statements on the ground that the government had not shown that they were voluntarily made. During the hearing on the motion to suppress the inculpatory statements, counsel for the defense stated, in substance, that the question of illegal arrest and seizure was not in the case. Both appellants testified on the motion but not in the trial.

During a recess in the trial the following colloquy occurred between Judge Young and Mr. Overton:

"MR. OVERTON: Your Honor, during the course of the recess, my clients asked me to move for a mistrial on the grounds that they were highly dissatisfied with the way their lawyer had been conducting the trial; that their lawyer was a civil lawyer, not a criminal lawyer; that he had not made a point of several facts which had come out in the evidence—number one, their arrest was the result of illegal search and seizure. The arresting officer—Officer Ferguson, I believe, who came to the apartment on the first occasion—went into the apartment and that led to Leo Clay's arrest and he thinks that is an illegal arrest.

"Secondly, there were several points during the course of the testimony in connection with the flat tires. One witness said the car had one flat tire and another witness said three; and they did not like the way I handled that discrepancy in the testimony. They did not like the way that I did not bring out the fact that there were no finger prints on the instrument panel to indicate the automobile had been driven. I think that about covers the ground.

"THE COURT: Well, these things of course, it's always awkward when an appointed lawyer is criticized by his compulsory clients. It's not unusual I assure you, Mr. Overton; and still more awkward, of course, for the attorney to have to report his clients' complaints about him to the Court, although you did the right thing in doing so.

I find no merit to any of the contentions raised by the defendants and related to the Court by counsel, and I certainly think that counsel for the defendants has done an excellent job in representing the defendants up to this point. The fact he is not a miracle worker may be the cause of dissatisfaction.

At any rate, I find no merit in any of these. There will be no mistrial.

"MR. RIDDICK (Assistant United States Attorney): For the record, I would like to say he has kept about two-thirds of my case out, and not many people are able to do that."

After the trial and during the sentencing proceeding Judge Young further observed:

"I would like to make this comment, that I have observed a number of trials of criminal cases and I think it is only fair to say that Mr. Overton, who acted as counsel for these defendants, performed, in my opinion, a very able job and the Court thanks him for representing them in that fashion." [2]

Do the proceedings as outlined above present a "plain error" situation? In Robinson v. United States, 327 F.2d 618 (8th Cir. 1964), in an analogous situation, we exhaustively dealt with a belated attempt to attack the legality of an arrest and incidental search and seizure. In *Robinson*, as here, there was no pre-trial motion to suppress the evidence on the ground that its seizure was

---

2. After the trial, because of their dissatisfaction with his services, Mr. Overton requested to be relieved from representing appellants on appeal. The request was granted and appellants' present counsel was appointed by this Court.

not incidental to a lawful arrest. Judge Blackmun's analysis is apropos here:

"The prosecution therefore was not challenged about the arrest, showed only such facts as led to the search, was under no necessity of offering evidence in justification and explanation of the entry, and in effect was lulled into an assumed security which the defense would now make false. We, of course, do not know from this record what the government would or could have proved by way of explanation and justification. We do feel that, under the circumstances of this case, the defense is not now in a position to complain by afterthought. If an arrest and the search and the discovery of evidence are to be challenged on appeal, that challenge must be made in the first instance in the trial court. Fairness to that court and to counsel and to a reviewing court demands this. So do 'fair procedural requirements.' This presents no 'plain error' or Rule 52(b) situation for there may be no error at all." 327 F.2d at 623.

In Sykes v. United States, 373 F.2d 607 (5th Cir. 1966), the Fifth Circuit adopted the *Robinson* rationale and rejected the defendants' attempt to scrutinize for the first time on appeal the circumstances of an arrest that culminated in the seizure of incriminating evidence subsequently admitted at trial. In refusing to invoke the "plain error" rule the Court stated:

" * * * [T]his Court has held that there is no 'plain error' where, irrespective of the substantiality of the claimed error, the record does not present the question in enough detail."

*  *  *  *  *  *

"The present case classically illustrates the soundness of this rule. Whether or not there was error was not visible because all of the circumstances of the arrest were not before the court. That which is not visible cannot be 'plain.' We are not equipped for divination. Only the proper objection to the offered evidence would have allowed a clear picture in which

we might have found error." 373 F.2d at 612–613.

See also, Johnson v. United States, 362 F.2d 43, 46 (8th Cir. 1966); Gray v. United States, 114 U.S.App.D.C. 77, 311 F.2d 126, 127 (1962).

■ If the challenge to the validity of the arrest were presented in a vacuum, that is, on a record void of evidence relating to the issue, we would have no hesitation in rejecting outright, as did the Courts in *Robinson* and *Sykes*, the allegation of "plain error." Since the United States Attorney had no reason to anticipate this belated attack on the arrest and seizure, he understandably failed to fully develop all of the minute circumstances relating to this aspect of the case. The orderly administration of justice requires adherence to clearly defined rules designed to apprise the trial judge of an opportunity to consider and pass upon claimed errors.

Nevertheless, the circumstances attending the arrest were explored in the hearing on the motion to suppress to such an extent as to enable us to reach a definitive conclusion on the merits of the question.

■ The Supreme Court in a series of cases has enunciated the standards to be applied in determining whether in a given situation the circumstances are sufficient to constitute probable cause for an arrest.

In Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), the Court stated:

"Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543]." Id. at 175–176, 69 S.Ct. at 1310.

The Supreme Court has continuously adhered to the *Brinegar* pronouncements. See, e. g., Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Ker v. State of California, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); McCray v. State of Illinois, 386 U.S. 300, 304–305, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).

■■ We are mindful that in determining the validity of an arrest we are dealing with the probability, and not the certainty, that an offense has been or is being committed. While probable cause implies that the information which has come either directly or indirectly to the arresting officers' knowledge must rise above the mere suspicion of criminal activity, it at the same time need not be tantamount to that quantum of proof which would sustain a conviction of guilt.

The Supreme Court has not exacted a rigid requirement of proof to establish the existence of probable cause:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life in which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, supra, 338 U.S. at 175, 69 S.Ct. at 1310.

■ With these considerations in mind we turn to the evidence bearing upon the issue of probable cause.

Appellants were arrested in Ellicott City, Maryland on June 20, 1967. During the morning of that day Howard R. Ferguson, a patrolman of Howard City, Maryland, had been reliably informed that one Leo Clay was wanted in Henrico County, Virginia for grand larceny and in Richmond, Virginia for parole violation.[3] Acting on this information Ferguson, accompanied by officers Beasley, Corman, Hinkel, Lawrence and Newbauer, went to No. 2 Hamilton Street in Ellicott City, where Ferguson believed Leo Clay could be located. Ferguson and the other officers entered the apartment building at that address. They encountered appellant James Leon Clay in a room on the third floor. Upon inquiry as to the whereabouts of Leo Clay, James falsely stated that he had returned to Virginia. During the interview officer Ferguson observed two suitcases in the adjoining room. He requested permission to search the apartment, but his request was denied by James because the officer was not armed with a search warrant. Ferguson, believing that Leo was still in the apartment, departed and proceeded to the Magistrate Court for a fugitive warrant. Officer Beasley remained for the purpose of keeping the building under surveillance.

After Ferguson had left, officer Jack Burke arrived at No. 2 Hamilton Street. According to his testimony he had received a call directing him to go to that location and assist officer Beasley. While cruising around the building,

---

3. Officer Ferguson testified:
   "On the 20th of June, 1967, at approximately 9:30 A.M. * * * I received certain information that two subjects were living in an apartment at No. 2 Hamilton Street. I learned that * * * one of the subject's name was Leo Clay, a white male, age 30 to 35, five foot eleven, 160 pounds, brown hair and brown eyes. The second subject was a white male, 20, five foot nine, 120 pounds, brown hair and brown eyes. I checked their file at headquarters and found a teletype, active and wanted, on a Leo Clay, DOB (date of birth) 3–1930, five feet eleven, 163 pounds, medium build, brown hair, brown eyes. * * * Wanted in Henrico County, Virginia for grand larceny and also in Richmond, Virginia for parole violation."
   In the hearing on the motion to suppress, James Leon Clay and Leo Junior Clay testified that they were 20 and 29 years old, respectively.

Burke was approached by a citizen who told him that an officer needed help behind the building. Burke proceeded in that direction. He observed Beasley a short distance from the apartment standing on the bank of the Tibre Creek and the appellants about twenty feet below at the water's edge. They were engaged in "tearing up things and throwing them" into the stream of water. Burke observed what he believed was a gun in the belt of James Leon Clay. He thereupon obtained a shotgun from his automobile and placed both under arrest. An immediate search disclosed that each was in possession of a pistol, which matched two of the guns stolen in Little Rock, Arkansas. The officers retrieved some of the papers thrown into the creek and by reconstructing them were able to obtain the names of the appellants.

■ Unquestionably, probable cause existed for the arrest of James Leon Clay. Officer Burke testified that he observed "what I believed to be a revolver or a pistol stuck in his belt." Possession of a concealed weapon is an offense proscribed by Maryland law.[4]

Even though it was later ascertained that appellant Leo Junior Clay was not the Leo Clay described in the police teletype, officer Ferguson nevertheless had reasonable grounds upon which to entertain the belief that Leo Junior Clay was a fugitive from justice and was hiding in the apartment the morning of the arrest. Cf. Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976, 978–979 (1966). The inference is clear that this information had been conveyed to officers Beasley and Burke. Cf. Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835 (1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967); Williams v. United States, 113 U.S.App.D.C. 371, 308 F.2d 326, 327 (1962). Additionally, James Leon Clay had falsely informed officer Ferguson that Leo had returned to Virginia. The time and manner of departure from the apartment are not revealed.

In addition to knowledge of the above facts, there is also the circumstance that Burke was warned by a citizen that officer Beasley needed help. Coupled with his observation of the gun in the possession of James Leon Clay, Burke also noticed that both were tearing up pieces of paper and throwing them into the creek. While this circumstance in itself may create only a suspicion of unlawful activity, it nevertheless does provide another link in the chain of circumstances tending to give the arresting officer reasonable grounds to believe that an offense had been committed. Cf. McNeely v. United States, 353 F.2d 913 (8th Cir. 1965).

A realistic view of the conduct of the appellant belies the action of law abiding citizens. We do not attempt to justify the existence of probable cause for an arrest by reference to the fruits of the search and seizure. Rather we consider only the facts and circumstances known to the arresting officers at the time they were required to act. Perhaps the individual items of information known to officer Burke, when viewed in isolation, would not support a finding of probable cause. When considered in totality, however, the web of circumstances here points to more than the bare suspicion of criminal activity. Indeed, the facts and circumstances within the knowledge of the officers based upon reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution to believe that an offense had been or was being com-

4. Md.Stat.Ann. Art. 27, § 36 provides in relevant part:

"Every person who shall wear or carry any pistol \* \* \* or any other dangerous or deadly weapon \* \* \* concealed upon or about his person, and every person who shall wear or carry any such weapon openly with the intent of injuring any person in any unlawful manner, shall be guilty of a misdemeanor, and upon conviction thereof, shall be imprisoned in jail, or the Maryland House of Correction for not less than six months nor more than three years \* \* \*."

mitted. See Smith v. United States, supra.

No. 19,050

It was stipulated that the automobile described in the indictment had been stolen in North Little Rock on June 8, 1967. The same automobile was found in a parking lot about one-half block from the scene of appellants' arrest. Numerous fingerprints both inside and outside the automobile coincided with prints obtained from the appellants after their arrest.

■ Despite the array of circumstantial evidence against them, appellants contend that the Dyer Act charge is not supported by substantial evidence. This argument rests upon the premise encompassed in their first point, that is, that the evidence which established the elements of the Dyer Act offense, was obtained solely as the consequence of appellants' illegal arrest. Our ruling on the probable cause issue is dispositive of this question. Careful examination of the record satisfies us that the conviction in case No. 19,050 was based upon strong and convincing evidence.

The judgments are affirmed.