**UNITED STATES of America**

**v.**

**David AUSTIN, a/k/a Turtle et al.**

**Appeal of James B. LEWIS.**

**No. 71-1881.**

United States Court of Appeals, Third Circuit.

Argued March 14, 1972.

Decided April 20, 1972.

---

Joseph C. Santaguida, Philadelphia, Pa., for appellant.

Thomas J. McBride, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before MAX ROSENN and JAMES ROSEN, Circuit Judges, and TEITEL-BAUM, District Judge.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

This is an appeal from a judgment of conviction on four counts involving the aiding and abetting of a sale of narcotic drugs on two occasions, in violation of 26 U.S.C.A. § 4704(a), § 4705(a). Appellant argues that certain testimony concerning prior statements of a witness for the defense should not have been admitted, and that the evidence as a whole is insufficient to support a guilty verdict. We do not agree.

As substantive evidence of guilt, the Government presented the testimony of two police officers, Saunders and Harris. Officer Saunders' testimony, in pertinent part concerning the first narcotics transaction may be summarized as follows: On June 24, 1970, Saunders entered a bar at about 2:55 P.M. and found the appellant Lewis engaged in conversation with an unknown person. Saunders approached Lewis and asked if he could purchase 20 bundles of heroin. He also asked him "if he could stand it" whereupon Lewis told him to wait a minute. Lewis left the front exit of the bar and walked west on Wallace Street. About fifteen minutes later, Austin walked in the bar, approached Saunders and asked him if he wanted 20 bundles. Saunders replied in the affirmative and Austin then fixed the price at $1300. Saunders asked Austin "where is Butch," referring to the appellant Lewis, to which Austin replied that he was outside.

Saunders, Harris and Austin then left the bar and walked west on Wallace Street. As they walked along Wallace Street, Officer Saunders observed the appellant Lewis talking to several unknown men. He turned to Lewis and inquired what he meant by a price of $65 a bundle. Lewis pointed to Austin and said: "See him." As Saunders, Harris and Austin departed, Lewis said to Austin: "Don't forget what I told you."

This testimony was substantially corroborated by Officer Harris. The officers purchased heroin from Austin on the same day as the incident related in Saunders' testimony.

Officer Saunders testified concerning the second narcotics transaction as follows:

> Then [I] asked Lewis how many bundles could he get for the price of $2500, at which time the defendant, Lewis, asked for a piece of paper and a pen and figured up the price. The price came to—he said we could get thirty-nine bundles for the $2500, and even at that he would be losing money, $35 or $40.
>
> I then asked the defendant Lewis, could he go any lower. Lewis then stated to me that he didn't bag his own stuff, and if I wanted weight, he could get it for me, but he said that I would have to cut it and bag it myself, and this is time-consuming. I agreed to the .fact that it was time-consuming.
>
> Then I also said to Lewis, "Like on the other deal," referring back to 6–24–70, "that we asked for twenty bundles but you only came across with fifteen." Lewis then stated that, "I had to do it that way because I couldn't let my boys up here starve. I had to save some for the fellows up here," at which time the defendant then asked me what my name was. I stated to him my name was Robert Smith. He also asked Officer Harris what his name was. He told him his name.

Again, this testimony was substantially corroborated by Officer Harris. And,

again, the officers purchased heroin from Austin on the day on which the incidents related above took place. The amount of heroin received was thirty nine bundles, corresponding to the terms of the conversation held between Lewis and the officers.

The defense sought to rebut this testimony by presenting Austin as a witness. Austin testified that the transactions were his own, admitted pleading guilty to the sale of narcotics and stated that Lewis had had nothing to do with the sales.

The Government then called the officers to the stand, and proceeded to introduce testimony concerning prior statements made by Austin. The judge allowed these statements, but at the same time cautioned the jury that they were for impeachment purposes only. The statements not only contradicted Austin's testimony for the defense, but also indicated that Lewis had been involved in the narcotic transactions.

■ Appellant's first contention is that the substantive evidence outlined above is insufficient to sustain a verdict. Appellant places his primary reliance upon Orozco-Vasquez v. United States, 344 F.2d 827 (9th Cir. 1965). There, the court summarized the evidence as follows:

> At best we know Molano [the defendant] on one day twice watered a guilty defendant's lawn, and drove that same defendant (his girl friend) to and from an appointment where narcotics were sold, but in which sale he did not participate, and at which he was not present.
>
> There was never any proof Molano ever had any personal, actual possession of narcotics, nor constructive possession of them, nor knowledge of their presence in someone else's possession in the car he drove (if they were present). He never received, nor had even temporarily in his possession, any fruit of a sale.
>
> Id., at 829.

In the instant case the jury, believing the officers' testimony, had evidence that after asking Lewis if they could purchase narcotics and after Lewis had told them to wait, they were approached by Austin, with whom they consummated a sale. There was testimony that after discussing the price of the narcotics with Lewis, Lewis told the officers to: "See him," indicating Austin. Moreover, the officers testified that Lewis stated that he "had" to give them less bundles because "I couldn't let my boys up here starve."

This was evidence from which the jury could reasonably infer that Lewis and Austin were collaborating in the sale of heroin, and although Lewis was careful to avoid being present when the money and narcotics passed, that he was nonetheless aiding Austin in the entire transaction.

■ Secondly, appellant contends that the court erred in allowing impeachment of Austin, by the use of his prior inconsistent statements, since they tended to incriminate the defendant in the commission of the offense for which he was being tried, in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Lewis v. Yeager, 411 F.2d 414 (3d Cir.), cert. denied, 396 U.S. 923, 90 S.Ct. 256, 24 L.Ed.2d 204 (1969), directly answers appellant's contention. In *Lewis*, this court considered the applicability of *Bruton* where:

> . . . *the appellant himself called* as a witness in his defense *an alleged confederate who thereupon gave testimony tending to exculpate the appellant.* The prosecution was then permitted to impeach the witness by introducing into evidence his prior inconsistent statement incriminating the appellant.

Id., at 414 (emphasis supplied)

We held that this was not error, since:

> . . . *the appellant himself had created the occasion* for the use of the incriminating prior statement of the alleged conference and the appellant was permitted to cross-examine the witness about that statement . . . .

Id., at 414 (emphasis supplied)

Of course, in *Lewis*, "[t]he court accurately instructed the jury concerning the limited permissible use of this statement for impeachment purposes." *Id.*, at 414. Similarly, in the instant case, the judge, at the time of the admission of the impeachment evidence, carefully instructed the jury concerning the "permissible use" of the impeachment evidence.[1]

■ Appellant's third contention is that in failing to include an instruction to the jury in the court's charge concerning the limited use of this evidence, the court erred. However, appellant took no objection to the charge. More-

---

1. The court instructed the jury as follows when the impeachment evidence was introduced:

"Now we are permitting the testimony, ladies and gentlemen of the jury, in relationship now as to what Mr. Austin said for your evaluation of Mr. Austin's testimony. I tried to explain to you yesterday when Austin was not present that you could not consider that as substantive evidence against Mr. Lewis, but you may consider the statements now as to what Mr. Austin said to Mr. Saunders in your making your judgment of the credibility or the believability of Mr. Austin."

As the court noted in instructions given above, it had previously instructed the jury on the matter of how they were to treat evidence of Austin's testimony concerning statements by Lewis. The substance of that instruction was: "Ladies and gentlemen of the jury, somewhere in the process I will have to explain to you some rules of evidence, part of which relate to hearsay. Now, what Mr. Saunders is saying that purportedly the defendant said, you will not be able to consider at this point as any evidence against the defendant. Now, I don't know what the facts of this case are going to develop. So, that I am just giving you this cautionary instruction, and to that extent I sustain it."

**319**

over, the court took pains to insure that his instructions met with counsel's approval.[2] Since the court had previously, on two occasions, instructed the jury as to the limited use of Austin's testimony, this is not such a flaw as could be considered "plain error" under Rule 52(b), Fed.R.Crim.Proc. Sykes v. United States, 373 F.2d 607 (5th Cir. 1966), cert. denied, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967). Thus, appellant's failure to object precludes his raising the issue here.

The final argument of appellant concerns the summation of the United States Attorney. During this summation, appellant's counsel entered into a discussion with the court. Appellant believes that this discussion constituted a promise by the court to include an instruction concerning the use of the impeachment testimony. As we have noted, no objection was taken to the court's charge. But, in any event, the colloquy between counsel and the court constituted no promise by the court. The court merely noted that it would "instruct the ladies and gentlemen of the jury as to what relevant, substantive weight of testimony is." A reading of the transcript shows that this appeared to satisfy appellant. In any event, no explicit objection was taken during the colloquy, and as we have noted, no objection was taken to the court's charge.[3]

The judgment of the district court will be affirmed.

---

2. At the close of the judge's charge, the following colloquy took place:

"THE COURT: . . . [a]ny exceptions, gentlemen?

MR. McBRIDE: No, sir.

MR. SANTAGUIDA: No, Your Honor.

THE COURT: No exceptions?

MR. SANTAGUIDA: General exception.

THE COURT: Will you please come up to side bar? Do you want to take the jury out for a minute? (Jury out at 11:39 o'clock A.M.) (And at side bar:)

THE COURT: When you say 'general exceptions,' general exceptions mean absolutely nothing to me. If you have something very specific—

MR. SANTAGUIDA: No.

MR. McBRIDE: Then no exceptions.

MR. SANTAGUIDA: Thank you.

THE COURT: All right. Bring the jury back in."

3. The substance of appellant's comments, and the court's reply is as follows:

MR. SANTAGUIDA [counsel for Mr. Lewis]: Your Honor, excuse me. I think that certain testimony that was elicited from Mr. Austin was only for the purpose of impeaching Mr. Austin's credibility, and can't be used.

THE COURT: I will instruct the ladies and gentlemen of the jury as to what relevant, substantive weight of testimony is. Mr. McBride nor you do not have to give the rule of law in terms of what the evidence is.

MR. SANTAGUIDA: Right. I feel the way he is reviewing it—