FILED

02/13/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 18, 2025 Session

## STATE OF TENNESSEE v. RANDALL LEE NEECE

**Appeal from the Criminal Court for Sullivan County**
**No. S69304        William K. Rogers, Judge**

———————————————————

### No. E2023-01654-CCA-R3-CD

———————————————————

A Sullivan County jury convicted the Defendant, Randall Lee Neece, of first degree premeditated murder. On the first day of trial, the Defendant moved for a change of venue, asserting that a newly installed "Victims of Violent Crime" monument outside the courthouse prejudiced prospective jurors. The trial court denied the motion, and the Defendant was convicted as charged. On appeal, the Defendant does not challenge the denial of a venue change or the adequacy of voir dire but instead contends that the sworn jurors were exposed to extraneous prejudicial information through the monument. Upon our review, we conclude that this claim was not preserved for plenary review and does not warrant plain error relief. We therefore respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which KYLE A. HIXSON and STEVEN W. SWORD, JJ., joined.

William Warren Gill, IV, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Gene G. Scott, Jr. and Lesley Tiller, Jonesborough, Tennessee (at trial), for the appellant, Randall Lee Neece.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Barry P. Staubus, District Attorney General; and Emily B. Hutchins and K. Kaylin Render, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On January 18, 2018, Randall Neece strangled his estranged wife with an electrical cord. The Defendant then called law enforcement, and officers arrived on the scene shortly thereafter and identified the victim's body. After officers took the Defendant into custody and advised him of his *Miranda* rights, the Defendant confessed in a written statement that he killed the victim. In that statement, the Defendant indicated that he first attempted to smother the victim with a shower curtain before ultimately strangling her with the electrical cord. The investigation later revealed that the Defendant recorded himself during the incident, stating, "I'm glad to know she's gone" and "she will not hurt another guy that's for sure," while the victim gasped for air in the background.

Five months later, a Sullivan County grand jury indicted the Defendant on one count of first degree premeditated murder. On the first day of trial in April 2022, the Defendant filed a "Motion for Change of Venue Due to Prejudicial Victims' Monument Installed in Front of the Courthouse."

According to the motion, a "Victims of Violent Crime" monument had been unveiled on the grounds of the Sullivan County Justice Center the day before trial. The monument consisted of multiple stone structures bearing the names of individuals identified as victims of violent crime, and it was located near the public entrance of the courthouse. The Defendant asserted that the monument was visible to jurors as they entered and exited the courthouse during trial proceedings and that its presence would prejudice potential jurors and prevent him from receiving a fair trial at the Sullivan County Justice Center.

The trial court denied the motion, finding that voir dire could adequately address any concerns related to the monument, and the case proceeded to trial. During voir dire, the State asked the prospective jurors whether they had noticed a monument outside the courthouse when entering the building that morning. No prospective juror responded affirmatively or negatively to the question, and the record reflects no verbal or nonverbal indication from the panel that any juror had observed the monument. The Defendant did not further question the prospective jurors regarding the monument, nor did he request additional voir dire on the issue. The case then proceeded to trial.

Following the trial, the jury found the Defendant guilty as charged, and the trial court imposed a sentence of life imprisonment. Although the Defendant filed a timely

motion for a new trial, he presented no additional proof or argument beyond the written filing. The trial court denied the motion in a written order entered on November 16, 2023, and the Defendant filed a timely notice of appeal thirteen days later. *See* Tenn. R. App. P. 4(a).

## ANALYSIS

In this appeal, the Defendant challenges the trial court's denial of his pretrial motion styled as a motion for change of venue based on the presence of a "Victims of Violent Crime" monument outside the courthouse. Although the Defendant requested a change of venue as relief in the trial court, he contends on appeal that the monument was an improper influence and subjected jurors to extraneous prejudicial information, thereby violating his constitutional right to a fair trial by an impartial jury. According to the Defendant, once jurors were exposed to the monument, a presumption of prejudice arose that the State failed to rebut.

The State responds that the Defendant failed to preserve plenary review of this claim by not specifically raising it in his motion for a new trial. The State further argues that the Defendant is not entitled to plain error relief because he did not request such relief in his opening brief. We agree with the State.

### A.    PRESERVATION OF EXPOSURE CLAIM

We first address the State's argument that the Defendant's claim is waived. Generally, before a party may raise an issue on appeal, the party must preserve that issue by raising it in the trial court. *See State v. Gardner*, 716 S.W.3d 388, 416 (Tenn. Crim. App. 2024). To preserve an issue for plenary review, a defendant must raise a timely and specific objection in the trial court and later present the same ground in a timely, written motion for a new trial. *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024). Absent both steps, a party waives plenary review of an issue on appeal. *Id.*

In this case, the Defendant filed a pretrial motion for a change of venue pursuant to Tennessee Rule of Criminal Procedure 21(a). The motion asserted that the presence of the monument outside the courthouse was "inherently prejudicial" and rendered a fair trial impossible in the county of venue. During the argument, defense counsel maintained that the venue should be changed because the monument created undue prejudice against the Defendant. The trial court denied the motion, and the case proceeded with jury selection.

The Defendant raised no further objections regarding the monument during voir dire, trial, or deliberations. Although the State asked the venire whether anyone noticed a monument outside the courthouse, no prospective juror responded affirmatively, and the Defendant asked no follow-up questions. In his motion for a new trial, the Defendant again framed the issue solely as an error in denying his motion for a change of venue. He presented no proof at the hearing and relied exclusively on his written motion.

On appeal, however, the Defendant does not argue that the trial court abused its discretion in denying a change of venue or that voir dire failed to produce an impartial jury. Instead, he advances a different theory. He contends that the monument exposed the empaneled jurors to extraneous prejudicial information during the course of the trial and that this exposure tainted the jury's deliberations.

Although claims for a change of venue and claims involving a jury's exposure to extraneous prejudicial information both implicate the right to a fair and impartial jury, they are analytically distinct. This court has consistently treated them as separate legal theories, even when they arise from the same underlying circumstances. *See State v. Crenshaw*, 64 S.W.3d 374, 394 (Tenn. Crim. App. 2001) (separately analyzing claims for change of venue and exposure to extraneous information when each claim was based on the same pretrial publicity).

For example, a change of venue may be granted "because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a); *see also* Tenn. Code Ann. § 20-4-201 (2021); *State v. Rogers*, 188 S.W.3d 593, 621 (Tenn. 2006) (appendix). The defendant bears the burden of establishing the need for a venue change, and an important factor in this analysis concerns the effect that the information or publicity has had on the prospective jurors. *See, e.g.*, *State v. Thacker*, 164 S.W.3d 208, 238 (Tenn. 2005); *State v. Hoover*, 594 S.W.2d 743, 746 (Tenn. Crim. App. 1979). Even so, prospective jurors who have formed preliminary opinions from pretrial exposure to information may still be empaneled and sworn if they can set those opinions aside and decide the case solely on the proof presented at trial. *See, e.g.*, *Irvin v. Dowd*, 366 U.S. 717, 723 (1961); *State v. Sexton*, 368 S.W.3d 371, 387 (Tenn. 2012). Once the jury is sworn, "we presume the jury is impartial and qualified" in the absence of proof to the contrary. *See Smith v. State*, No. M2020-00559-CCA-R3-PC, 2021 WL 1561396, at *10 (Tenn. Crim. App. Apr. 21, 2021) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Aug. 6, 2021).

Unlike a claim for a change of venue, a claim that the jury has been exposed to extraneous prejudicial information does not concern the impartiality of prospective jurors at the time of selection. Instead, it presupposes that a properly empaneled jury has been

seated and challenges the fairness of the jury's deliberative process. Such a claim arises when jurors are exposed to facts or opinions not admitted into evidence but bearing on a fact at issue. The claim may also encompass improper outside influences, such as unauthorized communications or contacts with jurors. *See generally State v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013).

Importantly, a claim of exposure to extraneous prejudicial information operates under a different procedural framework and burden-shifting mechanism than a change-of-venue claim. The party challenging the verdict must first make an evidentiary showing that the jury was exposed to extraneous prejudicial information or an improper outside influence. *See, e.g., State v. Smith*, 418 S.W.3d 38, 46 (Tenn. 2013). Upon that showing, a rebuttable presumption of prejudice arises, shifting the burden to the State to introduce admissible evidence showing that the exposure was harmless. *Id.* Relevant considerations include the nature and content of the information or influence, the number of jurors exposed, the manner and timing of the exposure, and the weight of the evidence offered at trial. *Adams*, 405 S.W.3d at 654.

These distinctions matter. A change-of-venue claim and a claim alleging juror exposure to extraneous information rest on separate legal frameworks, entail distinct elements, and call for consideration at separate stages of the proceedings. The claims also implicate varying burdens of production and, in some circumstances, burdens of persuasion. Standing alone, a pretrial motion to change venue does not later serve to challenge the integrity of the jury's deliberative process once the trial has begun, even when both claims arise from the same underlying concern. *See Crenshaw*, 64 S.W.3d at 394.

The requirement of a contemporaneous objection on a specific ground enables "the trial court [to have] an opportunity to address and/or correct the issue immediately." *State v. Walls*, 537 S.W.3d 892, 900 (Tenn. 2017). A timely objection also places the other party on notice that the party may need to take corrective action, offer other or additional evidence, or "develop fully [its] opposing positions on an issue." *State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022); *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *4 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*. For these reasons, among others, we have been "extremely hesitant to put a trial court in error where its alleged shortcoming has not been the subject of a contemporaneous objection." *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

In this case, neither the trial court nor the State was placed on notice that the Defendant was asserting a claim concerning the jury's deliberative process. The Defendant never alleged that jurors who were properly empaneled and sworn were exposed to extraneous prejudicial information. He never requested a hearing to develop such proof,

nor did he invoke the procedural protections or burden-shifting framework applicable to extraneous-information claims. Instead, he now argues for the first time on appeal that exposure should be presumed and that the State failed to rebut that presumption—an argument dependent on legal standards that the parties below could not have known were in play.

In essence, the Defendant asks us to place the trial court in error on an issue that it was never asked to consider or rule upon in the first instance. We respectfully decline to do so. *See Gardner*, 716 S.W.3d at 433; *Bristol*, 654 S.W.3d at 925 ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal." (citation modified)). Because the Defendant raised only a venue claim in the trial court and in his motion for new trial, and because the extraneous-information theory advanced on appeal is a distinct legal claim governed by different standards and procedures, we conclude that the Defendant has waived plenary review of this issue on appeal. As such, the Defendant may obtain relief, if at all, only under the plain error doctrine. *See State v. Dotson*, 450 S.W.3d 1, 54 (Tenn. 2014).

## B.   PLAIN ERROR REVIEW

### 1.   Threshold Requirement:  Properly Raising an Issue for Plain Error Review

The plain error doctrine is an exceptional and discretionary form of appellate review. *See State v. Enix*, 653 S.W.3d 692, 701 (Tenn. 2022). It permits appellate courts, in limited circumstances, to review issues that were not properly preserved in the trial court or presented on appeal. *See* Tenn. R. App. P. 13(b), 36(b); *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021).

However, our supreme court has cautioned that this authority must be exercised sparingly, because the liberal application of plain error review would erode the values served by the party-presentation principle and issue-preservation requirements. *Bristol*, 654 S.W.3d at 927; *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). For that reason, and because the defendant generally bears the "burden to persuade an appellate court that the trial court committed plain error," *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007), the doctrine ordinarily applies only when a party affirmatively invokes it and advances a developed argument for its application.

Thus, we have recognized as a general principle that a party seeking plain error relief must raise and argue that theory in the opening brief, just as with any other claim for

appellate relief. *See, e.g.*, *Ruiz*, 716 S.W.3d at 453. This requirement is not merely formalistic. Requiring that plain error be raised in the opening brief promotes an orderly, transparent, and fair appellate process. It also ensures that both parties have a full and meaningful opportunity to address the distinct elements and burdens that plain error review entails. Consistent with this framework, an appellate court *may* refrain from conducting plain error review when an appellant advances that theory of relief for the first time in a reply brief. *See State v. Nunez*, No. M2024-00179-CCA-R3-CD, 2025 WL 1892446, at *9 (Tenn. Crim. App. July 9, 2025), *perm. app. denied* (Tenn. Nov. 20, 2025); *cf. State v. Linville*, 647 S.W.3d 344, 353 (Tenn. 2022) (conducting plain error review where the defendant requested such review in the alternative in the principal brief).

This framework rests on two related premises. The first is doctrinal and concerns the nature of plain error review itself. Plain error analysis is not an extension of the original merits review; it is a distinct inquiry governed by different standards, considerations, and burdens of persuasion. *See State v. Minor*, 546 S.W.3d 59, 67-68 (Tenn. 2018). Allowing plain error claims to surface for the first time in a reply brief may distort the adversarial process and encourage delayed presentation of arguments until a point when the opposing party has no meaningful opportunity to respond. As this court has observed, permitting new arguments to be advanced in a reply brief is "fundamentally unfair, as the appellee may not respond to a reply brief." *State v. Morgan*, __ S.W.3d __, No. E2023-01815-CCA-R3-CD, 2025 WL 1604472, at *11 (Tenn. Crim. App. June 6, 2025) (citation modified), *perm. app. denied* (Tenn. Oct. 9, 2025).

The second premise is structural and concerns the limited role of the reply brief. Our supreme court has made clear that when an appellant "only fully asserts and briefs [a] claim in [the] reply brief," the issue is waived. *Hughes v. Tenn. Bd. of Prob. & Parole*, 514 S.W.3d 707, 724 (Tenn. 2017); *see also Owens v. Owens*, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). Properly understood, a reply brief may respond to the State's assertion of waiver by demonstrating that a claim was, in fact, preserved for plenary review. However, where the possibility of waiver was reasonably apparent, the reply brief should not be used to acknowledge that possibility for the first time and then pivot to a new and independent claim for relief under the plain error doctrine.[1]

---

[1]       To be sure, an appellant may not always reasonably anticipate a preservation issue raised by the appellee. But a party's recognition that a claim may not have been preserved for plenary review is an inherent feature of appellate practice. Thus, where plain error review is desired, the obligation to *reasonably* identify and address that issue generally rests with the appellant in the opening brief. *See, e.g.*, *State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *8 (Tenn. Crim. App. May 6, 2025) (acknowledging a lack of objection and alternatively requesting plain error review in the opening

In this case, the Defendant raised no issue in the trial court concerning the jury's alleged exposure to extraneous prejudicial information. The issue was not brought to the trial court's attention through a contemporaneous objection, nor was it included in the motion for a new trial. Because these omissions made waiver of plenary review reasonably apparent at the time of appeal, plain error review could have been requested in the opening brief. Instead, the principal brief presumed that plenary review was available and did not raise an independent claim for plain error relief in its issue statement or argument. As a result, the claim for plain error relief was not presented in a manner that permitted focused adversarial testing.

As we cautioned in *Nunez*, "a routine practice of allowing plain error arguments to surface first in a reply brief undermines the appellate process and rewards strategic silence over timely advocacy." *Nunez*, 2025 WL 1892446, at *9. Consistent with that principle, we respectfully decline to exercise our discretion to conduct plain error review under these circumstances. *See State v. Mathews*, No. M2022-01210-CCA-R3-CD, 2024 WL 4039728, at *6 (Tenn. Crim. App. Sept. 4, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025), *cert. denied*, 146 S. Ct. 162 (2025).[2]

### 2.  Reinforcing Considerations:  Absence of a Record Establishing Error

Even if we were to agree that plain error review is appropriate—and we do not— our decision "is bolstered by the [D]efendant's failure to provide a record that clearly establishes what occurred in the trial court." *State v. Knowles*, 470 S.W.3d 416, 427 (Tenn. 2015). Plain error review is not a substitute for plenary appellate review. *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020). Rather, it is available only when the defendant shows that the alleged error meets five criteria:

(a)  the record must clearly establish what occurred in the trial court;

---

brief), *no perm. app. filed*. We caution against the practice of raising plain error review for the first time in a reply brief when the risk of waiver was plausible or reasonably apparent at the time the opening brief was filed.

[2]  We recognize that panels of this court have exercised discretion to conduct plain error review in limited circumstances notwithstanding a belated request. *See State v. Duncan*, No. M2023-01159-CCA-R3-CD, 2025 WL 1721045, at *10 (Tenn. Crim. App. June 20, 2025), *perm. app. denied* (Tenn. Dec. 11, 2025). Depending on the equities and procedural posture of a particular case, such review may be warranted. This case, however, does not present those circumstances.

(b)     a clear and unequivocal rule of law must have been breached;

(c)     a substantial right of the accused must have been adversely affected;

(d)     the accused did not waive the issue for tactical reasons; and

(e)     consideration of the error is "necessary to do substantial justice."

*See, e.g., State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019).  Whether these requirements are satisfied presents a question of law reviewed de novo.  *Knowles*, 470 S.W.3d at 423.

As our supreme court has explained, "[w]hat is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered."  *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005).  Put more directly, "if a fact is not in the appellate record, it did not happen."  *State v. Hamilton*, No. W2023-01127-CCA-R3-CD, 2024 WL 4130757, at *3 (Tenn. Crim. App. Sept. 10, 2024), *perm. app. denied* (Tenn. Feb. 20, 2025).  Accordingly, this court "may only review what is in the record and not what might have been or should have been included."  *State v. Coman*, No. W2020-01684-CCA-R3-CD, 2022 WL 2288523, at *7 (Tenn. Crim. App. June 24, 2022) (citation and internal quotation marks omitted), *no perm. app. filed*.

The requirement that the record clearly establish what occurred in the trial court is foundational, as it shapes and constrains the analysis of every other plain error consideration.  For example, without a record that clearly establishes the underlying facts, an appellate court cannot determine whether a clear and unequivocal rule of law has been breached.  *State v. Sykes*, No. W2009-02296-CCA-R3-CD, 2011 WL 2732660, at *13 (Tenn. Crim. App. July 14, 2011), *no perm. app. filed*.  Nor can the court assess whether a substantial right of the accused was adversely affected or whether consideration of the alleged error is necessary to do substantial justice.  *State v. Quaedvlieg*, No. E2023-00542-CCA-R3-CD, 2024 WL 807762, at *4 (Tenn. Crim. App. Feb. 27, 2024), *no perm. app. filed*.

As other courts have observed in this context, "[t]hat which is not visible cannot be 'plain.'"  *United States v. Caldwell*, 518 F.3d 426, 431 (6th Cir. 2008) (quoting *Sykes v. United States*, 373 F.2d 607, 613 (5th Cir. 1966)).  As such, arguments supporting plain error relief must be grounded in record evidence and cannot rest on speculation, hypotheticals, or conjecture.  *See State v. Schiefelbein*, 230 S.W.3d 88, 119 (Tenn. Crim. App. 2007).  Parties may not speculate their way into plain error relief.  *See State v. Jones*,

No. W2005-00014-CCA-R3-CD, 2007 WL 1840798, at *12 (Tenn. Crim. App. June 27, 2007), *perm. app. denied* (Tenn. Oct. 15, 2007).

These principles are dispositive here. As discussed above, a claim that the jury was exposed to extraneous prejudicial information requires the defendant to "*produce admissible evidence* to make an initial showing that the jury was exposed to extraneous prejudicial information or subjected to an improper outside influence." *Adams*, 405 S.W.3d at 651 (emphasis added). The record in this case does not satisfy that threshold requirement.

Assuming, without deciding, that this particular monument *could* constitute extraneous prejudicial information,[3] the record reflects only a single reference to the monument during the entire trial. That reference occurred during voir dire, when the State asked whether any prospective jurors had noticed a monument on their way into the courthouse that morning. No juror responded, and the State noted that no heads moved in response to the question. The Defendant did not question any prospective juror about the issue, nor did he make an offer of proof at trial, before deliberations, or during the hearing on the motion for a new trial. As a result, the record does not establish that any juror walked past the monument, noticed it, read any writing on it, or understood any possible message conveyed by it. *See Walsh v. State*, 166 S.W.3d 641, 649 (Tenn. 2005). Indeed, as far as the record shows, the jurors were asked only once whether they had "noticed" a monument, and no juror indicated that they had.

The Defendant nonetheless argues that the totality of the circumstances establishes a "reasonable likelihood" of juror exposure. In support of this claim, he relies in part on a statement made by the assistant district attorney during argument on the pretrial motion to change venue. Referring to the monument, the prosecutor there observed that jurors walking into the courthouse "may notice it, they may not notice it." We respectfully disagree that this statement constitutes an admission of exposure or reflects an understanding that exposure occurred. Instead, the statement's recognition that jurors might or might not notice the monument underscores the speculative nature of the Defendant's claim on appeal. A mere possibility that jurors *might* have encountered the monument does not amount to evidence that they *did*.

---

[3]    The State argues that the Defendant has not shown a breach of a clear and unequivocal rule of law because the monument cannot constitute extraneous prejudicial information. According to the State, the monument did not touch on any fact or issue relevant to the trial. *See Keen v. State*, No. W2004-02159-CCA-R3-PD, 2006 WL 1540258, at *31-32 (Tenn. Crim. App. June 5, 2006), *perm. app. denied* (Tenn. Oct. 30, 2006). In light of our holding declining plain error review, we do not reach the merits of this issue.

In the absence of any such proof, we decline to presume juror exposure based on conjecture about what jurors might have encountered. Were we to presume exposure on this record, the evidentiary requirement articulated in *Adams* would be rendered meaningless, allowing speculation to substitute for admissible proof. Our decisions plainly caution against that approach. *Cf. State v. Todd*, No. W2018-00215-CCA-R3-CD, 2019 WL 1753055, at \*10 (Tenn. Crim. App. Apr. 17, 2019) (declining to conclude that exposure to extraneous prejudicial information occurred, without more, based on the "mere fact the jurors, witnesses, and victims used the same hallway throughout the trial" and had mingled), *perm. app. denied* (Tenn. Aug. 21, 2019).

An appellate court "need not consider all of the elements [of plain error review] when it is clear from the record that at least one of them cannot be satisfied." *Reynolds*, 635 S.W.3d at 931. The absence of a record that clearly establishes what occurred in the trial court reinforces our decision not to engage in plain error review. Under these circumstances, the Defendant is not entitled to relief.

## CONCLUSION

In summary, we hold that the Defendant has waived plenary review of his claim that the jury was exposed to extraneous prejudicial information. We also hold that the Defendant is not entitled to review under the plain error doctrine. As such, we respectfully affirm the judgment of the trial court.

s/ **Tom Greenholtz**
TOM GREENHOLTZ, JUDGE

- 11 -